IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,

       Plaintiff,                   No. 2:11-cv-2439 JAM AC

    vs.

DULCE TORRES, dba
EL MALECON BAR & GRILL,

       Defendant.               __FINDINGS & RECOMMENDATIONS__

_____/

       Pending before the court is plaintiff's motion for default judgment against

defendant Dulce Torres, doing business as El Malecon Bar & Grill, located at 2518 East Fremont

Street, Stockton, California 95205.  Upon review of the motion and the supporting documents,

and good cause appearing, THE COURT FINDS AS FOLLOWS:

                    FACTUAL AND PROCEDURAL BACKGROUND

       On September 15, 2011, plaintiff, an international distributor of sports and

entertainment programming, filed a complaint against defendant alleging that the latter

unlawfully intercepted and exhibited a live broadcast of a prizefight program entitled "200:

Celebrate and Dominate: Shane Mosley v. Sergio Mora" ("the Program") in the establishment

for commercial advantage without obtaining a sublicense from plaintiff for its use, in violation of

1  the Communications Act, 47 U.S.C. § 605, the Cable Communications Policy Act, 47 U.S.C. §

2  553, and state law.  The complaint alleges defendant exhibited the Program on September 18,

3  2010.[1]

4          Plaintiff brings the following claims: (1) a violation of 47 U.S.C. § 605

5  (Unauthorized Publication or Use of Communications) alleging that defendant knowingly

6  intercepted, received, and exhibited the Program for purposes of direct or indirect commercial

7  advantage or private financial gain; (2) a violation of 47 U.S.C. § 553 (Unauthorized Reception

8  of Cable Services) based upon the same allegations; (3) a claim for conversion alleging that

9  defendant tortiously obtained possession of the Program and wrongfully converted it for his own

10 benefit; and (4) a violation of the California Business & Professions Code § 17200, *et. seq.*

11         In the complaint, plaintiff seeks $110,000 in statutory damages as well as

12 attorneys' fees and costs for Count I; $60,000 in statutory damages, as well as attorneys' fees

13 and costs for Count II; compensatory, exemplary, and punitive damages, as well as attorneys'

14 fees and costs for Count III; and restitution, declaratory relief, injunctive relief, and attorneys'

15 fees for Count IV.

16         The summons and complaint were served on defendant by substituted service on

17 January 8, 2012 (an "Amelio Doe" accepted service at defendant's place of business).  See Doc.

18 No. 5; Fed. R. Civ. P. 4(e)(2); Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d

19 1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction).  Defendant has

20

21         [1] Further details are provided in the affidavit of plaintiff's corporate president, submitted
   in support of the motion, and its attached exhibits.  See Doc. No. 11.  Plaintiff owned the
22 commercial exhibition licensing rights to the Program pursuant to contract with Golden Boy
   Promotions, Inc.  Under the contract Golden Boy retained exclusive rights to license live cable
23 and satellite television exhibition of the Program on a residential pay-per-view basis, and sold to
   plaintiff the exclusive right to exhibit or sublicense exhibition of the telecast at commercial
24 closed-circuit exhibition outlets.  Plaintiff then marketed the commercial exhibition rights to its
   commercial customers (i.e., casinos, racetracks, bars, restaurants and nightclubs).  Electronic
25 transmission of the live telecast was encrypted to ensure distribution only to licensed exhibitors,
   who paid fees to plaintiff under sublicensing agreements.  Id.  Plaintiff also submitted the
26 affidavit of an investigator who observed the Program being televised at the defendant
   establishment on the date of the live telecast.  See Doc. No. 9-3.

failed to file an answer or otherwise appear in this action. The clerk entered default against defendant on February 13, 2012.

Request for entry of default and the instant motion for default judgment and supporting papers were served by mail on defendant at defendant's last known address. Doc. Nos. 7, 9. Defendant did not file an opposition to the motion for entry of default judgment. Plaintiff seeks an entry of default judgment in the amount of $111,600 ($10,000 for statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); $100,000 for enhanced damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and $1,600 for conversion).[2]

LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court may consider the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

---

[2] Plaintiff does not seek default judgment on its claims brought pursuant to 47 U.S.C. Section 553 and the California Business & Professions Code § 17200, et. seq. See Riley Decl. ¶¶ 6-7.

1    As a general rule, once default is entered, well-pleaded factual allegations in the

2  operative complaint are taken as true, except for those allegations relating to damages.

3  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing

4  Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair

5  Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded

6  allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts

7  not contained in the pleadings, and claims which are legally insufficient, are not established by

8  default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning

9  v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847,

10  854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to

11  admit conclusions of law" (citation and quotation marks omitted).); Abney v. Alameida, 334 F.

12  Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally

13  insufficient claim.").  A party's default conclusively establishes that party's liability, although it

14  does not establish the amount of damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v.

15  Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered

16  pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the

17  liability of the defaulting party).

18                                          DISCUSSION

19  A.    The Eitel Factors

20         1.    Factor One: Possibility of Prejudice to Plaintiff

21         The first Eitel factor considers whether the plaintiff would suffer prejudice if

22  default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of

23  granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would

24  potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default

25  judgment, plaintiff would be without another recourse for recovery.  Accordingly, the first Eitel

26  factor favors the entry of default judgment.

1    2.    Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the
           Sufficiency of the Complaint

2

3          The undersigned considers the merits of plaintiff's substantive claims and the

4    sufficiency of the complaint together because of the relatedness of the two inquiries.  The

5    undersigned must consider whether the allegations in the complaint are sufficient to state a claim

6    that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at

7    1175.

8          Plaintiff seeks entry of default judgment on its claim brought pursuant to 47

9    U.S.C. § 605(a).[3]  Plaintiff's inability to allege the precise nature of the intercepted transmission

10   in this case, which is largely due to defendant's failure to appear or defend itself in the action,

11   raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's

12   claim under that provision.  The Federal Communications Act prohibits, among other things,

13   commercial establishments from intercepting and broadcasting  radio communications to its

14   patrons.  See 47 U.S.C. § 605(a).  In relevant part, 47 U.S.C. § 605(a) states:

15       No person not being authorized by the sender shall intercept any radio
         communication and divulge or publish the existence, contents, substance, purport,
16       effect, or meaning of such intercepted communication to any person.  No person
         not being entitled thereto shall receive or assist in receiving any interstate or
17       foreign communication by radio and use such communication (or any information
         therein contained) for his own benefit or for the benefit of another not entitled
18       thereto.  No person having received any intercepted radio communication or
         having become acquainted with the contents, substance, purport, effect, or
19       meaning of such communication (or any part thereof) knowing that such
         communication was intercepted, shall divulge or publish the existence, contents,
20       substance, purport, effect, or meaning of such communication (or any part
         thereof) or use such communication (or any information therein contained) for his
21       own benefit or for the benefit of another not entitled thereto.

22   The Ninth Circuit Court of Appeals has determined that satellite television signals are covered

23

24         [3]  The undersigned does not address the merits of, or sufficiency of the allegations in
     support of, plaintiff's state law claim for conversion.  As discussed more fully below, the
25   undersigned need not reach plaintiff's conversion claim because the recommended statutory
     damages will sufficiently compensate plaintiff such that an award for conversion damages would
26   be duplicative.

1   communications under 47 U.S.C. § 605(a).  DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th

2   Cir. 2008).

3          The scope of section 605(a) is less clear with respect to transmissions intercepted

4   from a cable system, which are expressly covered under 47 U.S.C. § 553(a).  Section 553(a)

5   states, in relevant part:  "No person shall intercept or receive or assist in intercepting or receiving

6   any communications service offered over a cable system, unless specifically authorized to do so

7   by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C.

8   § 553(a)(1).[4]

9          Here, plaintiff has not alleged whether the transmission that defendant intercepted

10  was from a cable system or a satellite television signal.  A split of authority has developed

11  regarding the scope of section 605(a) in that numerous courts have concluded that section 605(a)

12  applies exclusively to broadcasts obtained by way of a satellite television signal, as opposed to

13  transmissions over a cable system, and that section 553 applies exclusively to transmission over

14  a cable system.  Compare United States v. Norris, 88 F.3d 462, 466-69 (7th Cir. 1996) (holding

15  that sections 553(a) and 605(a) are not "overlapping statutes" and are thus mutually exclusive),

16  with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996) (holding that section

17  605 and section 553 are not completely overlapping); see also TKR Cable Co. v. Cable City

18  Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (recognizing the disagreement between the holdings

19  in Norris and Sykes, and holding "that § 605 encompasses the interception of satellite

20  transmissions to the extent reception or interception occurs prior to or not in connection with,

21  distribution of the service over a cable system, and no more" (internal quotation marks

22

23          [4] Section 553 carries lower minimum statutory damages and lower enhanced damages
    than section 605.  Compare 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii) (providing for
24  the award of statutory damages of not less than $1,000 and no more than $10,000, and under
    certain circumstances enhanced damages of up to $100,000 per violation), with 47 U.S.C.
25  § 553(c)(3)(A)(ii) (providing for the award of statutory damages of not less than $250 and not
    more than $10,000, and under certain circumstances enhanced damages of up to $50,000 per
26  violation).

1    omitted).).

2           At a minimum, plaintiff's complaint and evidence support a conclusion that

3    defendant intercepted, without authorization, a transmission of the Program and broadcast it to

4    its patrons.  Plaintiff essentially concedes that its complaint and the record contain no allegations

5    or evidence substantiating the nature of the transmission that was intercepted by defendant.

6    Plaintiff argues, however, that although it was unable to allege the precise means of transmission

7    in this case (i.e., transmission over a cable system or satellite broadcast), it "should not be

8    prejudiced" given defendant's failure to appear or defend itself in this action.  Pl.'s Memo. of P.

9    & A. in Supp. of Motion for Default J. at 8.  The undersigned agrees with plaintiff that under the

10   circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery

11   regarding the transmission at issue because of defendant's failure to appear or defend itself in

12   this action, plaintiff should not suffer the resulting prejudice.  In any event, the split of authority

13   presented above has little practical impact in this case because the undersigned will recommend

14   the entry of a judgment in the total amount of $5,000, which is the middle range of the non-

15   enhanced statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C.

16   § 605(e)(3)(C)(i)(II).  Thus, insofar as the merits of plaintiff's statutory claims and the

17   sufficiency of its pleadings under the Eitel factors are concerned, the complaint and record

18   before the undersigned favor entry of default judgment.

19           3.    Factor Four: The Sum of Money at Stake in the Action

20           Under the fourth factor cited in Eitel, "the court must consider the amount of

21   money at stake in relation to the seriousness of Defendant's conduct."  PepsiCo, Inc., 238 F.

22   Supp. 2d at 1177; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494,

23   500 (C.D. Cal. 2003).  Here, plaintiff seeks statutory damages of $110,000 for the willful

24   violation of 47 U.S.C. § 605.  This amount represents the maximum amount plaintiff would be

25   permitted to recover under the statute, including enhanced damages.  In addition, plaintiff seeks

26   compensatory and punitive damages for defendant's tortuous conversion of plaintiff's property.

7

1   Plaintiff notes defendant would have been required to pay only $1,600 to broadcast the Program

2   at the bar and grill, but plaintiff asserts nominal damages have proven insufficient to combat

3   piracy and that defendant therefore should be required to pay the statutory maximum.  Thus,

4   plaintiff seems to concede that amount of damages requested is not proportional to defendant's

5   conduct.

6           Given the substantial amount of money at stake, this factor could weigh against

7   the entry of default judgment.  See, e.g., Joe Hand Promotions v. Streshly, 655 F. Supp. 2d 1136

8   (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing

9   law"); J & J Sports Productions. v. Cardoze, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010)

10  ("a large sum of money at stake would disfavor default damages," such as damages totaling

11  $114,200); see also Board of Trustees of the Sheet Metal Workers v. Vigil, 2007 WL 3239281,

12  at *2 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of

13  money involved"); but see J & J Sports Productions v. Hernandez, 2010 WL 1980186, at *4

14  ("the statutes involved contemplate such an award under certain circumstances," and the factor

15  did not weigh against default judgment).  As discussed below, however, the court declines to

16  enter judgment in the amount requested.  Consequently, the factor does not weigh against

17  plaintiff.

18          4.   Factor Five: The Possibility of a Dispute Concerning Material Facts

19          The facts of this case are relatively straightforward, and plaintiff has provided the

20  court with well-pleaded allegations supporting its statutory claims and affidavits in support of its

21  allegations.  Here, the court may assume the truth of well-pleaded facts in the complaint (except

22  as to damages) following the clerk's entry of default and, thus, there is no likelihood that any

23  genuine issue of material fact exists.[5]  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226

24

25          [5] Defendant's failure to file an answer in this case or a response to the instant default
    application further supports the conclusion that the possibility of a dispute as to material facts is
26  minimal.

8

F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.

     5.    Factor Six: Whether the Default Was Due to Excusable Neglect

        Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Plaintiff served the defendant with the summons and complaint. Moreover, plaintiff served defendant by mail with notice of its application for default judgment. Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has not appeared in this action to date. Thus, the record suggests that defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this Eitel factor favors the entry of a default judgment.

     6.    Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

        "Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010); ACS Recovery Servs., Inc. v. Kaplan, 2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc., 2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished). Accordingly, although the undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

        Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is

1    entitled to the entry of default judgment against defendant and will make a recommendation to

2    that effect.  What remains is the determination of the amount of damages to which plaintiff is

3    entitled.

4    B.      Terms of Judgment

5              After determining that a party is entitled to entry of default judgment, the court

6    must determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the

7    record in this case, including the affidavits and declarations submitted by plaintiff, the

8    undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of

9    $5,000 as a result of defendant's unlawful interception and broadcast of the Program, and will

10   recommend the same.

11             Pursuant to section 605, a court may award statutory damages of "not less than

12   $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also

13   award enhanced damages of up to $100,000 if the "violation was committed willfully and for

14   purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C.

15   § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).

16             Here, plaintiff seeks a judgment in the amount of $111,600.  Plaintiff's

17   application for default judgment and proposed order indicate that this sum consists of $110,000

18   for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $1,600 as compensatory

19   damages arising from defendant's act of conversion.

20             In this case, plaintiff's investigator provided evidence that the establishment,

21   which has a capacity of 100 patrons, had about between 62 and 68 patrons inside on the day in

22   question and that defendant was unlawfully broadcasting the Program on an unspecified number

23   of televisions.[6]  Affiant Decl., Doc. No. 9-3; Pl.'s Mem. of P. & A. in Supp. of Motion for

24

25             [6] While plaintiff asserts in its motion that the Program was broadcast on four televisions
     inside defendant's establishment, see Pl.'s Mem. of P. & A. in Supp. of Motion for Default J. at

26   11, the Affiant Declaration provides only that there were four televisions; it does not specify how
     many of those televisions were broadcasting the Program.  See Affiant Decl., Doc. No. 9-3.

1    Default J. at 16.  Defendant's establishment is not large, and there is no evidence of a repeat

2    violation or additional egregious circumstances.  The investigator reported that there was no

3    cover charge for entry on the night in question.  There is no evidence before the court of any

4    promotion by defendant that the fight would be shown at the establishment.  There is also no

5    evidence before the court that a special premium on food and drink was being charged at the

6    establishment on the night of the fight or that the establishment was doing any greater level of

7    business on the night the fight was shown than at any other time.  Finally, plaintiff has presented

8    no evidence to the court suggesting that the defendant was a repeat broadcast piracy offender.

9    Balancing these facts with the widespread problem of piracy and the need for an award sufficient

10   to deter future piracy, the undersigned will recommend an award of statutory damages in the

11   amount of $5,000.  On the record before the court, the undersigned does not find that this case

12   merits an award of enhanced damages.

13            Plaintiff also seeks actual damages for defendant's alleged tortious act of

14   conversion in the amount of $1,600, which consists of the fee that defendant would have had to

15   pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense.[7]

16   The undersigned will not recommend an award of damages with respect to plaintiff's conversion

17   claim.  The statutory damages provisions at issue serve not only a deterrent function, see J & J

18   Sports Prods. v. Orellana, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010) (unpublished), but

19   also a compensatory function, which is evidenced by provisions that permit the award of

20   statutory damages or actual damages in a civil action.  See 47 U.S.C. § 605(e)(3)(C)(I); 47

21   U.S.C. § 553(c)(3)(A)(i).  Here, the recommended award of statutory damages in the amount of

22   $5,000 sufficiently compensates plaintiff, and this case does not present a set of circumstances

23   where an additional award might be warranted.  Accordingly, the undersigned will recommend

24   

25   [7] Damages for conversion are measured, in relevant part, by the value of the property at the time of the conversion.  Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649 F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221, 7 Cal. Rptr. 3d 597, 608 (Ct. App. 2003).

26

1  that plaintiff be awarded no damages on its conversion claim.

2     Finally, although the prayer for relief in the complaint and the application for

3  default judgment indicate that plaintiff seeks the award of costs and attorneys' fees, the

4  application for default judgment contains no argument or evidence in support of such a request.

5  Accordingly, the undersigned will not recommend the award of costs or attorneys' fees.

6     Accordingly, IT IS HEREBY RECOMMENDED that:

7     1. Plaintiff's application for default judgment be granted;

8     2. The court enter judgment against defendant on plaintiff's claims brought

9  pursuant to 47 U.S.C. § 605(a);

10     3. The court award statutory damages in an amount of $5,000.00 to plaintiff;

11  and

12     4. This case be closed.

13     These findings and recommendations are submitted to the United States District

14  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

15  days after being served with these findings and recommendations, any party may file written

16  objections with the court and serve a copy on all parties.  Such a document should be captioned

17  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

18  within the specified time may waive the right to appeal the District Court's order.  Turner v.

19  Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir.

20  1991).

21  DATED: December 12, 2012.

22

23                    ALLISON CLAIRE
                  UNITED STATES MAGISTRATE JUDGE

24

25  /mb;j&j2439.mdj

26

12