IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,                     No. 2:11-cv-2439 JAM AC

        vs.

DULCE TORRES, dba
EL MALECON BAR & GRILL,            ORDER AND

        Defendant.           FINDINGS & RECOMMENDATIONS

_____/

        Pending before the court is plaintiff's motion for default judgment against

defendant Dulce Torres, doing business as El Malecon Bar & Grill, located at 2518 East Fremont

Street, Stockton, California 95205.  On December 12, 2012, the undersigned filed Findings and

Recommendations in regards to the pending motion for default judgment.  ECF No. 14.  By this

disposition, however, the undersigned vacates the previously filed Findings and

Recommendations and files these Findings and Recommendations.  For the reasons stated below,

the undersigned recommends that plaintiff's motion for default judgment be granted, that

judgment be entered in plaintiff's favor, and that plaintiff be awarded $5,000 in statutory

damages and $25,000 in enhanced damages.

////

1

FACTUAL AND PROCEDURAL BACKGROUND

On September 15, 2011, plaintiff, an international distributor of sports and entertainment programming, filed a complaint against defendant alleging that the latter unlawfully intercepted and exhibited a live broadcast of a prizefight program entitled "200: Celebrate and Dominate: Shane Mosley v. Sergio Mora" ("the Program") in the establishment for commercial advantage without obtaining a sublicense from plaintiff for its use, in violation of the Communications Act, 47 U.S.C. § 605, the Cable Communications Policy Act, 47 U.S.C. § 553, and state law.  The complaint alleges defendant exhibited the Program on September 18, 2010.[1]

Plaintiff brings the following claims: (1) a violation of 47 U.S.C. § 605 (Unauthorized Publication or Use of Communications) alleging that defendant knowingly intercepted, received, and exhibited the Program for purposes of direct or indirect commercial advantage or private financial gain; (2) a violation of 47 U.S.C. § 553 (Unauthorized Reception of Cable Services) based upon the same allegations; (3) a claim for conversion alleging that defendant tortiously obtained possession of the Program and wrongfully converted it for his own benefit; and (4) a violation of the California Business & Professions Code § 17200, *et. seq.*

In the complaint, plaintiff seeks $110,000 in statutory damages as well as attorneys' fees and costs for Count I; $60,000 in statutory damages, as well as attorneys' fees and costs for Count II; compensatory, exemplary, and punitive damages, as well as attorneys'

---

[1]  Further details are provided in the affidavit of plaintiff's corporate president, submitted in support of the motion, and its attached exhibits.  See Doc. No. 11.  Plaintiff owned the commercial exhibition licensing rights to the Program pursuant to contract with Golden Boy Promotions, Inc.  Under the contract Golden Boy retained exclusive rights to license live cable and satellite television exhibition of the Program on a residential pay-per-view basis, and sold to plaintiff the exclusive right to exhibit or sublicense exhibition of the telecast at commercial closed-circuit exhibition outlets.  Plaintiff then marketed the commercial exhibition rights to its commercial customers (i.e., casinos, racetracks, bars, restaurants and nightclubs).  Electronic transmission of the live telecast was encrypted to ensure distribution only to licensed exhibitors, who paid fees to plaintiff under sublicensing agreements.  Id.  Plaintiff also submitted the affidavit of an investigator who observed the Program being televised at the defendant establishment on the date of the live telecast.  See Doc. No. 9-3.

1  fees and costs for Count III; and restitution, declaratory relief, injunctive relief, and attorneys'
2  fees for Count IV.

3          The summons and complaint were served on defendant by substituted service on
4  January 8, 2012 (an "Amelio Doe" accepted service at defendant's place of business).  See Doc.
5  No. 5; Fed. R. Civ. P. 4(e)(2); Pacific Atlantic Trading Co. v. M/V Main Express, 758 F.2d
6  1325, 1331 (9th Cir. 1985) (default judgment void without personal jurisdiction).  Defendant has
7  failed to file an answer or otherwise appear in this action.  The clerk entered default against
8  defendant on February 13, 2012.

9          Request for entry of default and the instant motion for default judgment and
10  supporting papers were served by mail on defendant at defendant's last known address.  Doc.
11  Nos. 7, 9.  Defendant did not file an opposition to the motion for entry of default judgment.
12  Plaintiff seeks an entry of default judgment in the amount of $111,600 ($10,000 for statutory
13  damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); $100,000 for enhanced damages pursuant
14  to 47 U.S.C. § 605(e)(3)(C)(ii); and $1,600 for conversion).[2]

15                                LEGAL STANDARD

16          Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a
17  party against whom a judgment for affirmative relief is sought who fails to plead or otherwise
18  defend against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not
19  automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans,
20  238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25
21  (9th Cir. 1986)); see Fed. R. Civ. P. 55(b) (governing the entry of default judgments).  Instead,
22  the decision to grant or deny an application for default judgment lies within the district court's
23  sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  In making this

24

25          [2]  Plaintiff does not seek default judgment on its claims brought pursuant to 47 U.S.C.
    Section 553 and the California Business & Professions Code § 17200, et. seq.  See Riley Decl.
26  ¶¶ 6-7.

                                        3

1   determination, the court may consider the following factors:

2       (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's
        substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at
3       stake in the action; (5) the possibility of a dispute concerning material facts; (6)
        whether the default was due to excusable neglect; and (7) the strong policy
4       underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

5   Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

6   disfavored.  Id. at 1472.

7           As a general rule, once default is entered, well-pleaded factual allegations in the

8   operative complaint are taken as true, except for those allegations relating to damages.

9   TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing

10  Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); see also Fair

11  Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002).  Although well-pleaded

12  allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts

13  not contained in the pleadings, and claims which are legally insufficient, are not established by

14  default."  Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning

15  v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Huynh, 503 F.3d 847,

16  854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to

17  admit conclusions of law" (citation and quotation marks omitted).); Abney v. Alameida, 334 F.

18  Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally

19  insufficient claim.").  A party's default conclusively establishes that party's liability, although it

20  does not establish the amount of damages.  Geddes, 559 F.2d at 560; cf. Adriana Int'l Corp. v.

21  Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990) (stating in the context of a default entered

22  pursuant to Federal Rule of Civil Procedure 37 that the default conclusively established the

23  liability of the defaulting party).

24  ////

25  ////

26  ////

1                                      DISCUSSION

2    A.      The Eitel Factors

3              1.      Factor One: Possibility of Prejudice to Plaintiff

4              The first Eitel factor considers whether the plaintiff would suffer prejudice if

5    default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of

6    granting a default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, plaintiff would

7    potentially face prejudice if the court did not enter a default judgment.  Absent entry of a default

8    judgment, plaintiff would be without another recourse for recovery.  Accordingly, the first Eitel

9    factor favors the entry of default judgment.

10             2.      Factors Two and Three: The Merits of Plaintiff's Substantive Claims and the
                       Sufficiency of the Complaint
11

12             The undersigned considers the merits of plaintiff's substantive claims and the

13   sufficiency of the complaint together because of the relatedness of the two inquiries.  The

14   undersigned must consider whether the allegations in the complaint are sufficient to state a claim

15   that supports the relief sought.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at

16   1175.

17             Plaintiff seeks entry of default judgment on its claim brought pursuant to 47

18   U.S.C. § 605(a).[3]  Plaintiff's inability to allege the precise nature of the intercepted transmission

19   in this case, which is largely due to defendant's failure to appear or defend itself in the action,

20   raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's

21   claim under that provision.  The Federal Communications Act prohibits, among other things,

22   commercial establishments from intercepting and broadcasting  radio communications to its

23   —————————————————

24             [3]  The undersigned does not address the merits of, or sufficiency of the allegations in
     support of, plaintiff's state law claim for conversion.  As discussed more fully below, the
25   undersigned need not reach plaintiff's conversion claim because the recommended statutory
     damages will sufficiently compensate plaintiff such that an award for conversion damages would
26   be duplicative.

                                             5

1    patrons.  See 47 U.S.C. § 605(a).  In relevant part, 47 U.S.C. § 605(a) states:

2           No person not being authorized by the sender shall intercept any radio
            communication and divulge or publish the existence, contents, substance, purport,
3           effect, or meaning of such intercepted communication to any person.  No person
            not being entitled thereto shall receive or assist in receiving any interstate or
4           foreign communication by radio and use such communication (or any information
            therein contained) for his own benefit or for the benefit of another not entitled
5           thereto.  No person having received any intercepted radio communication or
            having become acquainted with the contents, substance, purport, effect, or
6           meaning of such communication (or any part thereof) knowing that such
            communication was intercepted, shall divulge or publish the existence, contents,
7           substance, purport, effect, or meaning of such communication (or any part
            thereof) or use such communication (or any information therein contained) for his
8           own benefit or for the benefit of another not entitled thereto.

9    The Ninth Circuit Court of Appeals has determined that satellite television signals are covered

10   communications under 47 U.S.C. § 605(a).  DIRECTV, Inc. v. Webb, 545 F.3d 837, 844 (9th

11   Cir. 2008).

12          The scope of section 605(a) is less clear with respect to transmissions intercepted

13   from a cable system, which are expressly covered under 47 U.S.C. § 553(a).  Section 553(a)

14   states, in relevant part:  "No person shall intercept or receive or assist in intercepting or receiving

15   any communications service offered over a cable system, unless specifically authorized to do so

16   by a cable operator or as may otherwise be specifically authorized by law."  47 U.S.C.

17   § 553(a)(1).[4]

18          Here, plaintiff has not alleged whether the transmission that defendant intercepted

19   was from a cable system or a satellite television signal.  A split of authority has developed

20   regarding the scope of section 605(a) in that numerous courts have concluded that section 605(a)

21   applies exclusively to broadcasts obtained by way of a satellite television signal, as opposed to

22

23          [4] Section 553 carries lower minimum statutory damages and lower enhanced damages
     than section 605.  Compare 47 U.S.C. §§ 605(e)(3)(C)(i)(II) and 605(e)(3)(C)(ii) (providing for
24   the award of statutory damages of not less than $1,000 and no more than $10,000, and under
     certain circumstances enhanced damages of up to $100,000 per violation), with 47 U.S.C.
25   § 553(c)(3)(A)(ii) (providing for the award of statutory damages of not less than $250 and not
     more than $10,000, and under certain circumstances enhanced damages of up to $50,000 per
26   violation).

                                                      6

transmissions over a cable system, and that section 553 applies exclusively to transmission over a cable system.  Compare United States v. Norris, 88 F.3d 462, 466-69 (7th Cir. 1996) (holding that sections 553(a) and 605(a) are not "overlapping statutes" and are thus mutually exclusive), with Int'l Cablevision, Inc. v. Sykes, 75 F.3d 123, 132-33 (2d Cir. 1996) (holding that section 605 and section 553 are not completely overlapping); see also TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 204-07 (3d Cir. 2001) (recognizing the disagreement between the holdings in Norris and Sykes, and holding "that § 605 encompasses the interception of satellite transmissions to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system, and no more" (internal quotation marks omitted).).

          At a minimum, plaintiff's complaint and evidence support a conclusion that defendant intercepted, without authorization, a transmission of the Program and broadcast it to its patrons.  Plaintiff essentially concedes that its complaint and the record contain no allegations or evidence substantiating the nature of the transmission that was intercepted by defendant. Plaintiff argues, however, that although it was unable to allege the precise means of transmission in this case (i.e., transmission over a cable system or satellite broadcast), it "should not be prejudiced" given defendant's failure to appear or defend itself in this action.  Pl.'s Memo. of P. & A.  in Supp. of Motion for Default J. at 8.  The undersigned agrees with plaintiff that under the circumstances of this case, where plaintiff was deprived of the opportunity to conduct discovery regarding the transmission at issue because of defendant's failure to appear or defend itself in this action, plaintiff should not suffer the resulting prejudice.  In any event, the split of authority presented above has little practical impact in this case because the undersigned will recommend the entry of a judgment for statutory damages in the amount of $5,000, which is the middle range of the non-enhanced statutory damages available under both 47 U.S.C. § 553(c)(3)(A)(ii) and 47 U.S.C. § 605(e)(3)(C)(i)(II).  Thus, insofar as the merits of plaintiff's statutory claims and the sufficiency of its pleadings under the Eitel factors are concerned, the complaint and record

1    before the undersigned favor entry of default judgment.

2         3.    <u>Factor Four: The Sum of Money at Stake in the Action</u>

3              Under the fourth factor cited in <u>Eitel</u>, "the court must consider the amount of

4    money at stake in relation to the seriousness of Defendant's conduct." <u>PepsiCo, Inc.</u>, 238 F.

5    Supp. 2d at 1177; <u>see</u> <u>also</u> <u>Philip Morris USA, Inc. v. Castworld Prods., Inc.</u>, 219 F.R.D. 494,

6    500 (C.D. Cal. 2003).  Here, plaintiff seeks statutory damages of $110,000 for the willful

7    violation of 47 U.S.C. § 605.  This amount represents the maximum amount plaintiff would be

8    permitted to recover under the statute, including enhanced damages.  In addition, plaintiff seeks

9    compensatory and punitive damages for defendant's tortuous conversion of plaintiff's property.

10   Plaintiff notes defendant would have been required to pay only $1,600 to broadcast the Program

11   at the bar and grill, but plaintiff asserts nominal damages have proven insufficient to combat

12   piracy and that defendant therefore should be required to pay the statutory maximum.  Thus,

13   plaintiff seems to concede that amount of damages requested is not proportional to defendant's

14   conduct.

15              Given the substantial amount of money at stake, this factor could weigh against

16   the entry of default judgment.  <u>See</u>, <u>e.g.</u>, <u>Joe Hand Promotions v. Streshly</u>, 655 F. Supp. 2d 1136

17   (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing

18   law"); <u>J & J Sports Productions. v. Cardoze</u>, 2010 WL 2757106, at *5 (N.D. Cal. July 9, 2010)

19   ("a large sum of money at stake would disfavor default damages," such as damages totaling

20   $114,200); <u>see</u> <u>also</u> <u>Board of Trustees of the Sheet Metal Workers v. Vigil</u>, 2007 WL 3239281,

21   at *2 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of

22   money involved"); <u>but</u> <u>see</u> <u>J & J Sports Productions v. Hernandez</u>, 2010 WL 1980186, at *4

23   ("the statutes involved contemplate such an award under certain circumstances," and the factor

24   did not weigh against default judgment).  As discussed below, however, the court declines to

25   enter judgment in the amount requested.  Consequently, the factor does not weigh against

26   plaintiff.

4.      Factor Five: The Possibility of a Dispute Concerning Material Facts

        The facts of this case are relatively straightforward, and plaintiff has provided the court with well-pleaded allegations supporting its statutory claims and affidavits in support of its allegations.  Here, the court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists.[5]  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.

5.      Factor Six: Whether the Default Was Due to Excusable Neglect

        Upon review of the record before the court, the undersigned finds that the default was not the result of excusable neglect.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Plaintiff served the defendant with the summons and complaint.  Moreover, plaintiff served defendant by mail with notice of its application for default judgment.  Despite ample notice of this lawsuit and plaintiff's intention to seek a default judgment, defendant has not appeared in this action to date.  Thus, the record suggests that defendant has chosen not to defend this action, and not that the default resulted from any excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

6.      Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits

        "Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782 F.2d at 1472.  However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in

---

[5] Defendant's failure to file an answer in this case or a response to the instant default application further supports the conclusion that the possibility of a dispute as to material facts is minimal.

1   an action.  PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc.,

2   694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010); ACS Recovery Servs., Inc. v. Kaplan,

3   2010 WL 144816, at *7 (N.D. Cal. Jan. 11, 2010) (unpublished); Hartung v. J.D. Byrider, Inc.,

4   2009 WL 1876690, at *5 (E.D. Cal. June 26, 2009) (unpublished).  Accordingly, although the

5   undersigned is cognizant of the policy in favor of decisions on the merits—and consistent with

6   existing policy would prefer that this case be resolved on the merits—that policy does not, by

7   itself, preclude the entry of default judgment.

8           Upon consideration of the Eitel factors, the undersigned concludes that plaintiff is

9   entitled to the entry of default judgment against defendant and will make a recommendation to

10  that effect.  What remains is the determination of the amount of damages to which plaintiff is

11  entitled.

12  B.   Terms of Judgment

13          After determining that a party is entitled to entry of default judgment, the court

14  must determine the terms of the judgment to be entered.  Considering plaintiff's briefing and the

15  record in this case, including the affidavits and declarations submitted by plaintiff, the

16  undersigned concludes that plaintiff is entitled to an award of statutory damages in the amount of

17  $5,000 as a result of defendant's unlawful interception and broadcast of the Program, and will

18  recommend the same.

19          Pursuant to section 605, a court may award statutory damages of "not less than

20  $1,000 or more than $10,000" for violation of the Federal Communications Act, and may also

21  award enhanced damages of up to $100,000 if the "violation was committed willfully and for

22  purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C.

23  § 605(e)(3)(C)(i)(II), (e)(3)(C)(ii).

24          Here, plaintiff seeks a judgment in the amount of $111,600.  Plaintiff's

25  application for default judgment and proposed order indicate that this sum consists of $110,000

26  for a violation of 47 U.S.C. § 605(e)(3)(B)(iii) and (e)(3)(C)(ii), and $1,600 as compensatory

1   damages arising from defendant's act of conversion.

2         In this case, plaintiff's investigator provided evidence that the establishment,

3   which has a capacity of 100 patrons, had about between 62 and 68 patrons inside on the day in

4   question and that defendant was unlawfully broadcasting the Program on an unspecified number

5   of televisions.[6]  Affiant Decl., Doc. No. 9-3; Pl.'s Mem. of P. & A. in Supp. of Motion for

6   Default J. at 16.  The court recognizes the following factors that weigh against the imposition of

7   enhanced damages: defendant's establishment is not large, the investigator reported that there

8   was no cover charge for entry on the night in question, there is no evidence of any promotion by

9   defendant that the fight would be shown at the establishment, and there is no evidence that a

10  special premium on food and drink was being charged at the establishment on the night of the

11  fight or that the establishment was doing any greater level of business on the night the fight was

12  shown than at any other time.

13        Despite these factors, the court nonetheless finds that enhanced damages are

14  appropriate based on plaintiff's counsel's supplemental declaration identifying two additional

15  actions brought against this same defendant, Dulce Torres, individually and d/b/a/ El Malecon

16  Bar & Grill, for the same unlawful conduct.  See Riley Supp. Decl., ¶¶ 4-6; J&J Sports Prod.,

17  Inc. v. Torres, Case No. 2:11-cv-0653-JAM-KJN (awarding $10,000 in statutory damages and

18  $25,000 in enhanced damages on grant of plaintiff's motion for default judgment), and J&J

19  Sports Prod., Inc. v. Torres, 2:10-cv-3012-JAM-CKD (awarding $10,000 in statutory damages

20  and $15,000 in enhanced damages on grant of plaintiff's motion for default judgment).

21  Assessing plaintiff's history as a repeat offender, the court finds it necessary to award enhanced

22  damages to offset future unlawful conduct.  Balancing these facts with the widespread problem

23  of piracy and the need for an award sufficient to deter future piracy, the undersigned will

24  _____

25        [6]  While plaintiff asserts in its motion that the Program was broadcast on four televisions
    inside defendant's establishment, see Pl.'s Mem. of P. & A. in Supp. of Motion for Default J. at

26  11, the Affiant Declaration provides only that there were four televisions; it does not specify how
    many of those televisions were broadcasting the Program.  See Affiant Decl., Doc. No. 9-3.

recommend an award of statutory damages in the amount of $5,000, and an award of enhanced

damages in the amount of $25,000.

        Plaintiff also seeks actual damages for defendant's alleged tortious act of

conversion in the amount of $1,600, which consists of the fee that defendant would have had to

pay to plaintiff in order to lawfully broadcast the Program through a contractual sublicense.[7]

The undersigned will not recommend an award of damages with respect to plaintiff's conversion

claim.  The statutory damages provisions at issue serve not only a deterrent function, see J & J

Sports Prods. v. Orellana, 2010 WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010) (unpublished), but

also a compensatory function, which is evidenced by provisions that permit the award of

statutory damages or actual damages in a civil action.  See 47 U.S.C. § 605(e)(3)(C)(I); 47

U.S.C. § 553(c)(3)(A)(i).  Here, the recommended award of statutory damages in the amount of

$5,000 and enhanced damages in the amount of $25,000 sufficiently compensates plaintiff, and

this case does not present a set of circumstances where an additional award might be warranted.

Accordingly, the undersigned will recommend that plaintiff be awarded no damages on its

conversion claim.

        Finally, although the prayer for relief in the complaint and the application for

default judgment indicate that plaintiff seeks the award of costs and attorneys' fees, the

application for default judgment contains no argument or evidence in support of such a request.

Accordingly, the undersigned will not recommend the award of costs or attorneys' fees.

        Accordingly, IT IS HEREBY ORDERED that the December 12, 2012 findings

and recommendations are vacated; and

        IT IS HEREBY RECOMMENDED that:

        1.      Plaintiff's application for default judgment be granted;

---

        [7]  Damages for conversion are measured, in relevant part, by the value of the property at
the time of the conversion.  Cal. Civ. Code § 3336; see also Stan Lee Trading, Inc. v. Holtz, 649
F. Supp. 577, 581 (C.D. Cal. 1986); Spates v. Dameron Hosp. Ass'n, 114 Cal. App. 4th 208, 221,
7 Cal. Rptr. 3d 597, 608 (Ct. App. 2003).

1      2.      The court enter judgment against defendant on plaintiff's claims brought

2  pursuant to 47 U.S.C. § 605(a);

3      3.      The court award statutory damages in an amount of $5,000.00 and

4  enhanced damages in the amount of $25,000 to plaintiff; and

5      4.      This case be closed.

6          These findings and recommendations are submitted to the United States District

7  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

8  days after being served with these findings and recommendations, any party may file written

9  objections with the court and serve a copy on all parties.  Such a document should be captioned

10  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

11  within the specified time may waive the right to appeal the District Court's order.  Turner v.

12  Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir.

13  1991).

14  DATED: January 30, 2013.

15      `

16                                      ALLISON CLAIRE
                                        UNITED STATES MAGISTRATE JUDGE

17

18

19  /mb;j&j2439.mdj2

20

21

22

23

24

25

26

                                        13